# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | **2:19-cv-01930-ACA** |
| ] | |
| **GEORGE DRYWALL, INC., et al.,** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Wilfredo Lopez's motion to set aside the default judgment against him in this case.[1] (Doc. 85; *see also* doc. 86). Because Wilfredo Lopez has shown excusable neglect, the court **GRANTS** the motion and **SETS ASIDE**: (1) the part of the partial summary judgment finding that the government may foreclose on the lien on the Chilton County Property and (2) the part of the partial default declaratory judgment permitting the United States to sell the Chilton County Property free and clear of any interest or claims Wilfredo Lopez may have.

The United States filed this action against, as relevant at this point, George Drywall, Inc. ("George Drywall"), George Drywall's nominee and alter ego Jorge Lopez, and Mr. Lopez's brother, Wilfredo Lopez, seeking (1) to reduce George

---

[1] To avoid confusion, the court refers to Jorge Lopez as "Mr. Lopez" and to Wilfredo Lopez by his full name.

Drywall and Mr. Lopez's unpaid tax liabilities for the 2005, 2006, and 2007 tax years to judgment, (2) a declaration that the government's tax liens are enforceable against two pieces of real property, (3) to foreclose on the liens and sell the properties, (4) to determine the relative priority of liens and claims of the other defendants to those pieces of property, and (5) to distribute the proceeds of the sale of the properties in accordance with those interests. (Doc. 1 at 9). One of the properties, described in more detail in the court's partial judgments, is the "Chilton County Property." (Doc. 76 at 2; doc. 80 at 1–2).

Although Mr. Lopez and George Drywall appeared and defended the case, Wilfredo Lopez failed to appear, resulting in entry of default. (Doc. 20). The government moved for summary judgment against George Drywall and Mr. Lopez and for default judgment against Wilfredo Lopez (and two other defendants who are not at issue now). (Docs. 65, 71). The evidence presented in support of the motion for summary judgment, which was consistent with the allegations made in the complaint, showed that George Drywall incurred its tax liabilities in 2005, 2006, and 2007; Wilfredo Lopez and Mr. Lopez purchased the Chilton County Property in 2008; the government assessed unpaid taxes and penalties against George Drywall in 2009 and recorded notices of federal tax liens with the Chilton County Judge of Probate in 2012; and Wilfredo Lopez purchased Mr. Lopez's one-half interest in the Chilton County Property in 2018. (Doc. 75 at 4–7).

The court granted the motion for summary judgment, finding as undisputed that the government's tax assessments against George Drywall were valid; that Mr. Lopez was the nominee or alter ego of George Drywall, making him liable for the tax assessments; and that Mr. Lopez's ownership interest in the two properties at the time of the tax assessments created tax liens on the properties, including the Chilton County Property, in which Mr. Lopez had a one-half interest. (Doc. 75 at 11–13).

With respect to the Chilton County Property in particular, the court determined that although Wilfredo Lopez bought Mr. Lopez's interest in the Chilton County Property in 2018, the lien remained attached to the property. (*Id.* at 13–14). The court found that under 26 U.S.C. § 7403, the court could order the sale of the Chilton County Property to satisfy the tax liens. (*Id.* at 14). The court found foreclosure and sale of the property appropriate because "[n]o party [had] voiced any objection to the government's request to foreclose the liens and force sales of the two properties." (*Id.*). However, the court declined to find that Wilfredo Lopez had no claim to any of the proceeds of the sale and therefore denied the government's motion for default judgment against Wilfredo Lopez. (*Id.* at 9–10). In March 2022, the court entered a partial summary judgment consistent with its findings. (Doc. 76).

The government then moved for reconsideration of the denial of its motion for default judgment. (Doc. 78; *see* doc. 79 at 1). The court denied the government's

3

request to enter a judgment stating that Wilfredo Lopez lacked an interest in the Chilton County Property but granted the request to enter a judgment that the sale of the property was "free and clear of any liens or claims of" Wilfredo Lopez. (Doc. 79 at 4). In May 2022, the court entered a partial default declaratory judgment to that effect. (Doc. 80).

On May 17, 2022, the court entered a decree of foreclosure and order of sale for the Chilton County Property. (Doc. 83). The order gave Wilfredo Lopez until May 31, 2022 to file a notice with the court claiming his one-half interest in the proceeds of the sale of the Chilton County Property. (*Id.* at 7).

Wilfredo Lopez timely filed his notice of interest, in which he asserts that he has "*at least* a 50% interest in the Chilton County Property," but "in reality, Wilfredo's interest in the property is 100% and Jorge's is 0%." (Doc. 85 at 4, 8) (emphasis in original). The notice of interest asked this court to set aside the judgments to the extent the judgments authorized the forced sale or limited Wilfredo Lopez's interest in the Chilton County Property to 50%. (*Id.* at 5–8).

Wilfredo Lopez does not deny that Mr. Lopez had an ownership interest in the Chilton County Property at the time the government assessed the tax delinquencies or recorded the liens but asserts that Mr. Lopez's interest was "nominal" because Wilfredo Lopez paid the full price for the property and has paid all property taxes on it; he explains that he listed Mr. Lopez on the deed only so that

4

Mr. Lopez could use the property as security for a loan. (Doc. 85 at 2–5; doc. 87-1 at 7 ¶¶ 2–5, 8 ¶ 10). Wilfredo Lopez argues that under Alabama law, only a cotenant can force a sale of real property, but a judgment lien does not give a creditor (such as the United States government) a cotenancy interest. (Doc. 85 at 6). Accordingly, he asserts, the government cannot force a sale of the Chilton County Property. (*Id.*). He concludes that, even if the government's tax lien made it a cotenant, Alabama law requires partition instead of foreclosure. (*Id.* at 7).

The government opposes Wilfredo Lopez's motion to set aside the judgment to the extent he seeks to claim more than a 50% interest in the proceeds of the sale. (Doc. 90 at 1). It argues that, regardless of who paid for the property or property taxes, both Lopez brothers were listed on the deed and were tenants in common with a one-half interest in the property. (*Id.* at 5). And the government points out that it sought the forced sale under federal law—which permits the government to enforce its tax liens by forcing a sale of property in which the delinquent taxpayer has "any right, title, or interest"—not Alabama law. (*Id.* at 6–7); *see* 26 U.S.C. § 7403(a). The government concludes that under *United States v. Rodgers*, 461 U.S. 677 (1983), which sets out the factors the court must consider when deciding to sell property that an innocent third party owns in part, forced sale remains appropriate. (*Id.* at 7–10).

5

To set aside a default judgment under Rule 60(b)(1), the moving party must show excusable neglect, which requires that: "(1) [the party] had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003) (quotation marks omitted). The government concedes that Wilfredo Lopez had a good reason for failing to appear in this case and the court agrees. (Doc. 90 at 3–4; *see* doc. 87 at 7–12). The court's discussion will therefore be limited to whether Wilfredo Lopez has a meritorious defense and whether granting the motion would prejudice the government.

"[T]o establish a meritorious defense, the moving party must make an affirmative showing of a defense that is likely to be successful." *In re Worldwide Web Sys., Inc.*, 328 F.3d at 1296 (quotation marks omitted). Wilfredo Lopez contends that the evidence shows that (1) Mr. Lopez has no real ownership interest in the Chilton County Property because Wilfredo Lopez provided all the funding to buy the property, maintained possession of the property, and paid all property taxes since the purchase in 2008; (2) if Mr. Lopez has more than a nominal ownership interest, it is still less than a one-half interest; (3) Alabama law prevents a cotenant's creditor from forcing a sale of real property; and (4) even if the government were a cotenant, the appropriate remedy under Alabama law is partition. (Doc. 85 at 5–8).

6

Wilfredo Lopez's arguments about Alabama law preventing the United States government from forcing a sale are meritless: "[I]t has long been an axiom of our tax collection scheme that, although the definition of underlying property interests is left to state law, the consequences that attach to those interests is a matter left to federal law." *Rodgers*, 461 U.S. at 683 (1983); *see also United States v. Bess*, 357 U.S. 51, 56–57 (1958) ("[O]nce it has been determined that state law creates sufficient interests in the insured to satisfy the requirements of [the federal tax lien provision], state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States."). However, the court finds that Wilfredo Lopez does have a meritorious defense with respect to the amount of his interest in the Chilton County Property and whether a forced sale under 26 U.S.C. § 7403(a) is appropriate.

Alabama law provides that, where a deed names multiple parties but does not state the exact interest each of them has in the property, "the law raises the presumption that they were equally interested." *Long v. McDougald's Adm'r*, 23 Ala. 413, 417 (1853); *see also Whitlow v. Echols*, 78 Ala. 206, 209 (1884) ("When a deed conveys land to two jointly, without expressing the interest of each, the law raises the presumption, that they are equally interested, each taking a moiety."). However, it appears that this presumption is rebuttable. *See Tisdale v. Maxwell*, 58 Ala. 40 (1877) (holding, in the context of a purchase of personal property, that a note

7

which does not specify the share of each purchaser "imports, *prima facie*, a joint and co-equal interest in the two payees. This, however, does not preclude proof of the true transaction, and that the consideration moved from them, in separate and unequal amounts and values"). The deed does not specify the interest each of the Lopez brothers had in the Chilton County Property. (*See* doc. 72-7). But Wilfredo Lopez has presented evidence that he paid the entire purchase price for the Chilton County Property, as well as the property taxes. (Doc. 87-1 at 7 ¶ 4, 8 ¶ 10). This evidence could change the determination of his share in the proceeds in a forced sale if a forced sale is appropriate.

Not only does Wilfredo Lopez's evidence introduce some doubt about whether he has only a one-half interest in the property, it also changes the analysis about whether a forced sale under 26 U.S.C. § 7403(a) is appropriate. Section 7403(a) does not mandate a forced sale in all circumstances. *See Rodgers*, 461 U.S. at 708–09. Instead, the decision to order a forced sale is a question of "limited equitable discretion" involving an inquiry into a number of factors, including (1) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes"; (2) "whether the third party with a non-liable separate interest in the property would, in the normal course of events, . . . have a legally recognized expectation that that separate property would not be subject to forced sale by the

8

delinquent taxpayer or his or her creditors"; (3) "the likely prejudice to the third party, both in personal dislocation costs and in the sort of practical undercompensation described [earlier in the *Rodgers* opinion]; and (4) "the relative character and value of the non-liable and liable interests held in the property." *Id.* at 710–11.  The ultimate determination requires the court to weigh "both the Government's interest in prompt and certain collection of delinquent taxes and the possibility that innocent third parties will be unduly harmed by that effort." *Id.* at 709.

Wilfredo Lopez has presented evidence that could affect the equitable decision whether to order a forced sale and, if a forced sale is appropriate, how much of the proceeds he is entitled to receive.  Accordingly, he has presented a meritorious defense that may have affected the outcome of the case, had he presented it before the court entered judgment.  *See In re Worldwide Web Sys., Inc.*, 328 F.3d at 1296.

The only question remaining is whether setting aside the judgments would prejudice the government.  The question of prejudice is of "primary importance" in deciding whether to set aside a judgment.  *In re Worldwide Web Sys., Inc.*, 328 F.3d at 1297.  Wilfredo Lopez asserts that setting aside the judgments will not cause the government significant delay or costs or interfere in gathering evidence.  (Doc. 87 at 12–14).  The government responds only that setting aside the judgments will prejudice it because the government will be forced to litigate the issues instead of

9

resting on the default judgment, while interest continues to accrue on Mr. Lopez and George Drywall's tax debt. (Doc. 90 at 10–11). The court does not find the government's argument persuasive. Setting aside a default judgment will always result in the plaintiff having to litigate the case; that alone cannot serve as prejudice. And although the government points to the continued accrual of interest, that assertion is belied by the government's delay in bringing this case in the first place. The government assessed George Drywall's tax liabilities in 2009 and filed notices of federal tax liens in 2010 but did not promptly file this lawsuit, instead waiting until the end of 2019 to do so. (*See* doc. 75 at 5).

Because Wilfredo Lopez has shown excusable neglect, the court **SETS ASIDE** (1) the part of the partial summary judgment finding that the government may foreclose on the lien on the Chilton County Property (doc. 76 at 2) and (2) the part of the partial default declaratory judgment permitting the United States to sell the Chilton County Property free and clear of any interest or claims Wilfredo Lopez may have (doc. 80). The part of the partial summary judgment setting out Mr. Lopez and George Drywall's joint and several liability for unpaid federal corporate income tax liabilities and finding that the government has valid tax liens on the Shelby County and Chilton County Properties remains, as does the part of the partial declaratory default judgment finding that the United States may sell the Shelby

County Property free and clear of any lien interest or claims Old Cahaba Residential Association or Ditech Financial, LLC, may have.

**DONE** and **ORDERED** this August 10, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE